Wanamaker, J.
This is an original action in quo warranto to determine whether title to office rests in persons represented by the relator, or in the defendants.
*225 The petition filed in this court contains the formal averments usual in such actions, especially that at the November election in 1921 John A. Schneider, John S. Sims and Ed. S. Gay were duly elected as members of the Muskingum county board of education; that they duly received their certificates of election; that their official term began January 21, 1922; and that at ten o’clock A. M. on that day such duly elected members each took the official oath of office.
At 2:30 P. M., January 21, pursuant to a notice that above members had theretofore received, they all appeared with their credentials at a meeting of the county board of education, whereupon they were refused recognition as members of such board, for the alleged reason that they had not qualified and taken the oath of office as provided by the General Code, the claim being that under the code they were obliged to take the official oath before January 21, whereupon the members of the old board assumed to declare vacancies as to these three members, and proceeded to elect three other members, the defendants in this case, to fill such alleged vacancies. Hence arises the question raised by the petition, to which a general demurrer is filed by the defendants.
The sole question in this case is one of statutory construction. The demurrer admits the regular election of the members represented by the relator. The question is whether or not they duly qualified according to law, pursuant to the statute.
Section 4729, General Code (109 O. L., 242), provides that members elected at the regular election in 1921 shall serve “for four years from the third *226 Saturday of January, 1922,” which, was January 21st. Section 4731, General Code (108 0. L., pt. 1, 706), which is the keystone of this controversy, reads in full as follows:
“Each member of the county board of education shall before entering.upon the duties of his office, take an oath that he will faithfully perform the duties of his office. Such oath may be taken before anyone authorized by law to administer oaths. If any person so elected shall fail to take such oath before the beginning of his term, the office to which he was elected shall be considered vacant. Any vacancy on the board shall be filled in the same manner as is provided in section 4748 of the General Code.”
It is obvious that the whole question turns upon the language of these provisions:
, 1. “Each member * * * shall before entering upon the duties of his office, take an oath * *
2. “If any person so elected shall fail to take such oath before the beginning of his term, the office to which he was elected shall be considered vacant.”
Did the duly elected members qualify? That is the question.
Let us dissect Section 4731. It is a double-headed section. The first sentence relates wholly to the elected member qualifying for his official duties, and provides when and how he shall so qualify. He must take the oath “before entering upon the duties of his office.” Did the members duly elected perform any duties or assume to perform any duties as members of the board of education before they took the oath?
*227 No such absurd claim is made. It is clearly and convincingly apparent that before they entered upon their duties of office they took the proper official oath.
The second sentence as to who may administer oaths of office is entirely superfluous, and is already provided for in all other statutes. But the next two sentences provide not for the qualification of members of the board, but for their failure to qualify, and for the resulting vacancy. If the duties as to time and manner, expressly enumerated in the first sentence of Section 4731, have been fully and fairly complied with, then clearly there is no vacancy.
The sole contention of the defendants is that the language, “If any person so elected shall fail to take such oath before the beginning of his term, the office * * * shall be considered vacant,” means that he must take his oath before January 21. Why? His term did not begin before January 21; he had no duties to perform before January 21. Who would be prejudiced or benefited by his taking his oath before January 21? Standing alone, if the language read “before the beginning of the term,” it might if literally and technically construed be twisted into that requirement. But the language is not “before the beginning of the term,” but “before the beginning of his term,” and his term cannot begin until he takes the oath, which he did on January 21, the day on which the official term began.
The construction contended for by the defendants would be only another absurd illustration of the old-time doctrine, “The letter killeth, but the spirit giveth life.” Technical twisting of legal lan *228 g*uage so as to defeat the obvious purpose of the lawmakers deservedly brings the law into contempt and courts that indulge therein into disrespect. In. this case, were the contention of defendants to prevail, not only the public will, as represented in the statute, but the public will as represented in the election of the new members, would be defeated and nullified by an artificial and technical legalism that prevented rather than promoted justice.
But it is claimed that the statutes involved in this case are unconstitutional. The question of the legislative power of the general assembly of Ohio touching our public schools has been before this court on numerous occasions, and the broad general power of the general assembly has been affirmed and reaffirmed.
The whole question of school organization and management has been by the constitution left in the hands of the general assembly, with comparatively few constitutional restrictions. As late as 1912 a new amendment was proposed and adopted, Section 3, Article *YI, which so far as pertinent reads:
“Provision shall be made by law for the organization, administration and control of the public séhool system of the state * *
This question of absolute control of schools by the general assembly was before the supreme court of this state in a very early case, State, ex rel. Directors of the Eastern and Western School Districts of Cincinnati, v. City of Cincinnati, reported in 19 Ohio, 178. That case was not only distinguished by eminent counsel but considered by a very eminent court, Judge Peter Hitchcock, Chief Justice, rendering the opinion, in which he says, at page 197:
*229 “The whole subject of organizing and regulating schools is very properly left to the general assembly in the exercise of its legislative powers.
“But, although there is no such prohibitory clause, still it is insisted that this law, in the particular named [permitting the colored man on the school directory], is in contravention of the spirit of the constitution. In my opinion, this is rather dangerous ground to tread upon in determining the constitutionality of a law. We may all agree as to the reading of the constitution, and generally as to its meaning, but when we come to talk of its spirit, it is a different matter. There is great danger that we shall conclude that spirit to be in accordance with our preconceived opinions or feelings of what it ought to be.”
The present constitution of Ohio is unquestionably even broader in its grant of legislative power to the general assembly, touching public schools. The case of Mills v. City Board of Elections, 54 Ohio St., 631, dealing with the qualifications of women to be members of the board of education, in advance of state or national suffrage, was decided in favor of such members of the board of education upon the authority of the 19 Ohio case, supra.
It is perhaps necessary to give some special attention to one of the sections of the constitution urged upon the court as in conflict with Section 4728, General Code, by reason of which it is claimed that such section of the code must fail, and any organization thereunder likewise fail.
Section 20, Article II, reads:
“The general assembly, in cases not provided for in this constitution, shall fix the term of office and *230 the compensation of all officers; but no change therein shall affect the salary of any officer during his existing term, unless the office be abolished.”
We hold in this case that the legal effect of Section 4728 is the legal abolishment of the appointive county board of education, the right and power of selection being taken from the local boards and returned to the people themselves; that appointive boards and their members are abolished; and that elective boards and the members thereof are created.
To hold otherwise would be to regard the servant as superior to the sovereign. Moreover, above section of the constitution relates only to change in salary. Beyond that there is no restriction.
We find nothing in the statutes that is in any wise in clear conflict with any constitutional provision to which our attention has been called.

Judgment for relator.

Hough, Robinson, Jones, Matthias and Clark, JJ., concur.
Marshall, C. J., took no part in the consideration or decision of the case.